Richard M. ROSENTHAL,
Plaintiff–Appellant,

v.

Jane FONDA, et al.,
Defendant–Appellee.

No. 87–5659.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 1, 1988.

Decided Dec. 13, 1988.

Lawrence B. Steinberg, Wyman, Bautzer, Kuchel & Silbert, Los Angeles, Cal., for plaintiff-appellant.

Stanton L. Stein, Stein & Kahan, Santa Monica, Cal., for defendant-appellee.

Before FLETCHER, CANBY and O'SCANNLAIN, Circuit Judges.

CANBY, Circuit Judge:

Richard Rosenthal appeals the district court's grant of summary judgment in favor of Jane Fonda and four of her related corporations. The district court determined that New York law controlled this dispute and that New York's statute of frauds barred Rosenthal's claim against Fonda for breach of an oral contract. On appeal, Rosenthal contends that California, not New York, law should control this action and that California's statute of frauds does not bar his oral contract claim against Fonda. In addition, Rosenthal contends that even if New York law does properly control, his contract with Fonda is not barred by New York's statute of frauds. We affirm the district court's holding that New York's statute of frauds controls and that it serves to bar Rosenthal from enforcing this oral contract against Fonda.

## FACTUAL BACKGROUND

This action arises out of the twelve year relationship between Jane Fonda and her former attorney and general business manager, Richard Rosenthal. In 1968, Fonda, a California resident, retained the services of a New York law firm. She entered into an oral agreement with the firm that she would pay five percent of her earnings as compensation for the firm's services. Rosenthal, an attorney with the firm, assumed responsibility for a large share of the firm's activities on Fonda's behalf. In 1971, the law firm dissolved and in 1972, Rosenthal began to represent Fonda as an independent private practitioner. Rosenthal alleges that in April of 1972, he and Fonda entered into an oral contract where-

by he agreed to continue performing a variety of services for Fonda and she, in turn, agreed to pay him ten percent of all gross professional income derived from the projects that were initiated during his tenure.

Rosenthal continued to represent Fonda from his New York office. In 1978, Rosenthal and his family moved to California, at Fonda's request, so that he could be closer to her and represent her more efficiently. Despite relocating, Rosenthal maintained a home and an office in New York. Fonda discharged Rosenthal approximately two years later, on May 30, 1980.

Rosenthal brought suit against Fonda in California district court to recover commissions on projects that were initiated during his tenure and produced or continued to produce income after his termination. The district court granted Fonda's motion for partial summary judgment, holding that New York's statute of frauds applied and served to bar Rosenthal's oral contract claim unless Fonda was equitably estopped from asserting the statute as a defense. After a bench trial on the equitable estoppel issue, the district court granted Fonda's motion for a directed verdict, ruling that she was not equitably estopped from asserting the defense.[1] Accordingly, the court entered judgment for Fonda.

## DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1291. Rosenthal appeals the district court's grant of summary judgment in favor of Fonda, thus, we review the court's decision *de novo*. *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 914 (9th Cir.1987). *See also Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir.1987) (district court's conflict of law determination is reviewed *de novo* ).

Rosenthal contends that the district court should have applied California, not New York, law to resolve this dispute. The district court correctly recognized that a federal court sitting in diversity must apply the conflict of law rules of the forum. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). This case comes from the United States District Court for the Central District of California; therefore, California's conflict of law rules apply to determine whether California or New York law should properly control this case. California utilizes the "governmental interest" analysis in deciding conflicts of law. *See Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1195–96 (9th Cir. 1982).

The application of California's governmental interest analysis requires three steps. *Liew,* 685 F.2d at 1196. First, the substantive law of each state must be examined to assure that the laws differ as applied to this transaction. Second, if the laws do differ, the court must determine whether a "true conflict" exists in that both New York and California have an interest in having its law applied. Finally, if a true conflict exists, the court must determine which state's interest would be more impaired if its policy were subordinated to the policy of the other. *Id.* The conflict is resolved by applying the law of the state whose interest would be most impaired if its law were not applied. *Id.*

### I. *Do The Laws of the Two States Differ?*

The principal issue in this dispute is whether Rosenthal's breach of oral contract claim is barred under the statute of frauds provision that requires that all contracts not to be performed within one year be in writing. Textually, the relevant New York and California provisions of the statute of frauds are essentially identical. New York's statute of frauds provides that "[e]very agreement, promise or undertaking is void or unenforceable unless it or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith, or his agent, if such agreement, promise or undertaking, by its terms is not to be performed within one year from making thereof ..." N.Y.Gen. Oblig.Law § 5–701. Similarly, California's statute provides that "[t]he following con-

1. Rosenthal does not appeal the district court's     ruling on the question of estoppel.

tracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: 1. An agreement that by its terms is not to be performed within a year from the making thereof ..." Cal.Civ. Code § 1624.1.

■ The district court found that while these two provisions are facially identical, they are interpreted differently. The court correctly determined that in California, Rosenthal's employment contract with Fonda, terminable at the will of either party, would fall outside the bar of the state's statute of frauds because it is *capable* of being performed within a year. *See Eisenberg v. Insurance Company of North America*, 815 F.2d 1285, 1291 (9th Cir. 1987). California's one year provision is interpreted literally and narrowly. *Plumlee v. Poag*, 150 Cal.App.3d 541, 198 Cal. Rptr. 66, 71 (1984). Only those oral contracts which "expressly preclude performance within one year" or that "cannot possibly be performed within one year" are unenforceable. *Id.; White Lighting Co. v. Wolfson*, 68 Cal.2d 336, 66 Cal.Rptr. 697, 701, 438 P.2d 345, 349 (1968); *see Robards v. Gaylord Brothers, Inc.*, 854 F.2d 1152 (9th Cir.1988). In this case, Fonda could have discharged Rosenthal after he had worked for her for six months; therefore, this contract was capable of being performed within one year. Moreover, California's statute of frauds does not invalidate oral employment contracts that call for the payment of commissions after one year or upon termination of the employment relationship. *White Lighting*, 66 Cal. Rptr. at 701–02, 438 P.2d at 349–50. Thus, Rosenthal's oral contract with Fonda would not be barred under California's statute of frauds.

In New York, however, while a typical employment contract with no fixed term is not barred by the statute of frauds, *Fisher v. Ken Carter Industries, Inc.*, 127 A.D.2d 817, 512 N.Y.S.2d 408, 409 (1987), a commission sales arrangement that extends beyond the employee's termination or that has no specific time frame has repeatedly been held to be one that cannot be performed within one year. *See Zupan v. Blumberg*, 2 N.Y.2d 547, 161 N.Y.S.2d 428, 429, 141 N.E.2d 819, 822 (1957); *Urvant v. Imco Poultry, Inc.*, 325 F.Supp. 677, 683–85 (E.D.N.Y.1970), *aff'd*, 440 F.2d 1355 (2d Cir.1971) (summarizing New York case law applying the one year provision to continuing commission arrangements). The New York rule was enunciated in *McCollester v. Chisholm*, 104 A.D.2d 361, 478 N.Y.S.2d 691 (1984), *aff'd*, 65 N.Y.2d 891, 493 N.Y.S. 2d 310, 482 N.E.2d 1226 (1985):

> A service contract of indefinite duration, in which one party agrees to procure customers, or accounts, or orders on behalf of the second party, is not by its terms performable within one year—and hence must be in writing and signed by the party to be charged—since performance is dependent, not upon the will of the parties to the contract, but on that of a third party.

*Id.* at 692.

■ The key element in deciding whether New York's statute of frauds applies to bar a commission sales agreement is whether the defendant can unilaterally terminate the contract, discharging all promises made to the plaintiff including the promise to make commission payments. *See North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 292 N.Y.S.2d 86, 90, 239 N.E.2d 189, 191 (1968). If commission payments are due under the contract after one party has fully performed, the contract, by its own terms, cannot be performed within a year because there is no way the defendant can unilaterally terminate the contract. *See Shirley Polykoff Advertising, Inc. v. Houbigant, Inc.*, 43 N.Y.2d 921, 403 N.Y.S.2d 732, 733, 374 N.E.2d 625, 626 (1978) (contract providing that advertising agency receive $5,000 a year for every year the advertisement is used cannot be performed within one year). *See also Urvant*, 325 F.Supp. at 685–86 (Under New York law, the statute of frauds is applicable "where nothing in the commission contract contemplates its fulfillment within a year and no term or event controlled by the parties will bring the contract to an end with its promises discharged.").

■ In the present case, Rosenthal contends that Fonda promised him a percentage fee every time a project initiated during his tenure generated income. Fonda could not unilaterally terminate this contract once Rosenthal performed because she would continue to owe Rosenthal money under the contract for as long as his projects generated income. Moreover, Fonda's liability to perform under the contract and make commission payments to Rosenthal is dependent not upon her will, but upon the will of others who may elect, for example, to exhibit her works. This contract, therefore, would be barred under New York's statute of frauds as one that by its own terms could not be performed within a year.

## II. *Does A "True Conflict" Exist?*

■ Because the substantive law of California and that of New York differ when applied to this oral contract, we must next determine whether both New York and California have an interest in having their own law applied. *Liew*, 685 F.2d at 1196. If only one state has a legitimate interest in the application of its law, there is no real problem; the law of the interested state should control. *Hill v. Hill*, 193 Cal.App. 3d 1118, 238 Cal.Rptr. 745, 748 (1987).

California, as the forum state, has an interest in having its law applied to this case. *See Hill*, 238 Cal.Rptr. at 749. "Generally, the preference is to apply California law, rather than choose the foreign law as a rule of decision." *Strassberg v. New England Mut. Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir.1978). As the forum, a California court will conclude that a conflict is "false" and apply its own law unless the application of the foreign law will "significantly advance the interests of the foreign state." *Id. See also S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir.1981). California presumably also has an interest in the enforcement of oral contracts involving one of its domiciliaries, although it may be questioned whether it is interested in applying its rule to protect a domiciliary of New York when New York would not protect him.

■ New York can be said to have an interest if the policies underlying its statute of frauds would be advanced when the law is applied to this transaction. *See Fleury v. Harper & Row, Publishers, Inc.*, 698 F.2d 1022, 1025 (9th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983). The district court correctly found that New York's statute of frauds is meant to protect not only the state's residents, but also nonresidents who employ New York agents. *See e.g., Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 826, 248 N.E.2d 576, 582 (1969) (construing policy behind provision of New York's statute of frauds requiring that finder's fee agreements be in writing). In *O'Keeffe v. Bry*, 456 F.Supp. 822 (S.D.N.Y.1978), the court found that Georgia O'Keeffe, a New Mexico resident who had employed the services of a New York agent, had brought her business to New York and was thus entitled to the protections of New York's statute of frauds. *Id.* at 828. *See also Haydu v. Hospital For Joint Diseases Orthopaedic Institute*, 557 F.Supp. 577, 580 (S.D.N.Y. 1983) (New York is interested in protecting nonresidents to create a stable financial center that will attract out-of-state business). Thus, New York has an expressed interest in extending the protections of its statute of frauds to nonresidents, like Fonda, who choose to employ or do business with New York residents.

In addition, New York has sufficient contacts with this transaction to justify a significant interest in having its own law applied. *See Robert McMullan & Son, Inc. v. U.S. Fidelity & Guaranty Co.*, 103 Cal. App.3d 198, 162 Cal.Rptr. 720, 723 (1980) "[w]ith the governmental interest approach, "relevant contacts" ... are not disregarded, but are examined in connection with the analysis of the interest of the involved state in the issues...." (quoting *Dixon Mobile Homes, Inc. v. Walters*, 48 Cal.App.3d 964, 972, 122 Cal.Rptr. 202, 207–08 (1975)). Rosenthal was a New York resident, licensed to practice law only in New York, at the time he entered into the contract with Fonda. In addition, he per-

formed many years of service under the contract from his New York office; it was not until 1978 that Rosenthal became licensed to practice law in California and moved to Los Angeles. Even after he moved, Rosenthal maintained a home and office in New York. These contacts with New York serve to support New York's interest in having its own law apply to govern this transaction. Thus, both California and New York have a legitimate interest in having their own law apply to this case.

### III. The "Comparative Impairment" Analysis.

Under the third step in California's governmental interest analysis, the conflict between New York and California law must be resolved by applying the law of the state whose interest would be most impaired if its law were not applied. *Liew*, 685 F.2d at 1196. The district court held that New York's stricter statute of frauds should be applied because New York has an interest in protecting more people than California and California's interest would not be frustrated by the application of New York law.

New York courts have made it clear that New York has a strong interest in protecting out-of-state residents, even while making it easier to prove liability against its own residents, in order to encourage the national use of New York services. *See O'Keeffe*, 456 F.Supp. at 828.

It is true that California has some interest in applying the one year provision of the statute of frauds very narrowly to promote the enforceability of otherwise valid oral contracts. *See Plumlee*, 198 Cal.Rptr. at 71. It is also true that one of the parties to the oral agreement is a domiciliary of California. Nevertheless, California does not have a strong interest in applying its policy against its domiciliary in order to protect a New York plaintiff that New York has no interest in protecting.[2]

In addition, the parties' reasonable expectations were probably that New York law would apply to their contract. *See Roesgen v. American Home Products Corp.*, 719 F.2d 319, 321 (9th Cir.1983) (California forum will not apply California law when the facts indicate that the parties' only reasonable expectations were that the law of a foreign state would apply). Fonda sought out a New York law firm to represent her interests and Rosenthal was a New York resident, licensed to practice law in New York, when he entered into this agreement. The contract was "substantially performed" by Rosenthal from his New York office. *See id.* Rosenthal entered into the oral agreement with Fonda in April, 1972 and carried out his services from New York until 1978, when he moved to Los Angeles. Fonda terminated his services approximately two years later. Thus, the bulk of their agreement was performed by Rosenthal in New York. These facts indicate that the parties would have reasonably expected New York law to govern their agreement. Thus, the district court correctly concluded that New York's policies would be most impaired if its law were not applied.

### CONCLUSION

Under California's three step governmental interest test, the relevant statute of frauds provisions in California and New York produce different results when applied to this transaction, each state has an interest in having its own law applied, and New York's interest would be most impaired if its policies were subordinated to California's policies. Thus, the district court correctly determined that New York's law should govern this dispute. Rosenthal's oral fee agreement with Fonda would be barred under New York's statute of frauds as an agreement that cannot, by its own terms, be performed within one year. Accordingly, the district court's

---

**2.** We note that under recent legislation, California now requires certain attorney-client contracts to be in writing. *See* Cal.Bus. & Prof. Code § 6147 (West Supp.1988) (oral contingency fee contract voidable at option of plaintiff; attorney may recover only a reasonable fee); *id.* at § 6148 (contract for attorney's services must be in writing in any case in which it is reasonably foreseeable that total expenses to client, including attorney's fees, will exceed $1,000).

grant of summary judgment in favor of Fonda is AFFIRMED.